

LERACH
COUGHLIN
STOIA
GELLER
RUDMAN
& ROBBINS LLP

SAN DIEGO • SAN FRANCISCO
LOS ANGELES • NEW YORK • BOCA RATON
WASHINGTON, DC • HOUSTON
PHILADELPHIA • SEATTLE

Samuel H. Rudman
srudman@lerachlaw.com

January 26, 2007

<u>**VIA HAND DELIVERY/
ORIGINAL DOCUMENT ELECTRONICALLY FILED**</u>

Honorable Joanna Seybert
United States District Court
Eastern District of New York
Post Office Box 9014
Central Islip, New York 11722-9014

    Re:    *In re DHB Industries Inc. Class Action Litigation*
            05-cv-04296

Dear Judge Seybert:

    We represent Lead Plaintiffs NECA-IBEW Pension Fund, RS Holdings and George Baciu. As the Court will recall, at the hearing before your Honor on Friday, January 19, 2007, a new issue was raised by counsel for non-party absent class member Lena Bedik as to compliance with the notice provisions of the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1715.[1] As set forth below, we respectfully submit that CAFA's notice provisions should not be applied in this securities case because CAFA is directed to consumer class actions and appropriate protections are afforded by Fed. R. Civ. P. 23 and the Private Securities Litigation Reform Act (the "PSLRA").

### Overview of CAFA

    The Class Action Fairness Act ("CAFA") was signed into law on February 18, 2005. *See* Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4. The stated purpose of the Act is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Pub. L. No. 109-2, § 2(b)(2); *see also* Elizabeth J. Cabraser & Fabrice Vincent, *Class Actions Fairness Act of 2005*, 18 Cal. Litig. (2005). CAFA achieves this objective through two main provisions. First, CAFA federalizes interstate class actions by expanding the jurisdiction of federal district courts. 28 U.S.C. §1332 (2005); Richard Archibald &

---

[1] It must be noted that Bedik is not a party to this case and has no formal objection to the proposed settlement before the Court.

58 South Service Road, Suite 200 • Melville, New York 11747 • 631.367.7100 • Fax 631.367.1173 • www.lerachlaw.com

345   61-M



Honorable Joanna Seybert
United States District Court
January 26, 2007
Page 2

Michelle Hartmann, *The Class Action Fairness Act of 2005: Fundamentals and Implications of Financial Services Litigation*, 27 Class Action Rep. 227 (2006). Second, CAFA modifies class action settlement practices through its "Consumers' Class Action Bill of Rights." See 28 U.S.C. §§1711-1715 (2005); Richard Archibald & Michelle Hartmann, *The Class Action Fairness Act of 2005: Fundamentals and Implications of Financial Services Litigation*, 27 CLASS ACTION REP. 227 (2006).

CAFA expands federal diversity jurisdiction over class actions by amending 28 U.S.C. § 1332. The amendment was an effort by Congress to "correct a flaw in the current diversity jurisdiction statute . . . that prevents most interstate class actions from being adjudicated in federal courts." S. REP. NO. 109-14, at *5. Under CAFA, federal courts have original jurisdiction over class action lawsuits when: (1) minimal diversity exists; (2) the aggregate amount in controversy exceeds $5 million; (3) the aggregate number of all proposed class members is at least 100; and (4) the primary defendants are not States, State officials, or government entities against whom a federal district court may be foreclosed from ordering relief. 28 U.S.C. § 1332 (2005); Richard Archibald & Michelle Hartmann, *The Class Action Fairness Act of 2005: Fundamentals and Implications of Financial Services Litigation*, 27 CLASS ACTION REP. 227 (2006). Thus, CAFA purportedly makes it "more difficult for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction." S. REP. NO. 109-14, at *5. CAFA also creates efficiencies in the judicial system by allowing overlapping and "copycat" cases to be consolidated into a single federal court and places the determination of more interstate class action lawsuits in the federal courts. S. REP. NO. 109-14, at *5.

In addition to expanding federal diversity jurisdiction, CAFA enacted a Consumers' Class Action Bill of Rights, codified at 28 U.S.C. §§ 1711-1715. The consumers' bill of rights contains multiple components meant to provide mechanisms to safeguard plaintiff class members' rights. See S. REP. NO. 109-14, at *5 (2005). One such element prohibits federal courts from approving coupon or "net loss" settlements without making written findings that such settlements benefit the class members. See 28 U.S.C. § 1712(e) (2005); S. REP. NO. 109-14, at *5. A second element specifies the methods for calculating attorneys' fees in class settlements, in which coupons constitute all or part of the relief afforded to plaintiffs, to ensure that such fee awards are consistent with the benefits afforded class members or the amount of work performed by class counsel in connection with the litigation. 28 U.S.C. § 1712(b), (c) (2005); S. REP. NO. 109-14, at *5. Finally, the bill of rights requires that notice of class action settlements be sent by Defendants to the "appropriate state and federal official" in each state in which a class member resides no later than ten days after a proposed settlement is filed in court. 28 U.S.C. § 1715 (2005); S. REP. NO. 109-14, at *5.



Honorable Joanna Seybert
United States District Court
January 26, 2007
Page 3

The notice section imposes a heavy burden on defendants attempting to settle a nationwide class action by requiring that defendants identify each state in which a class member resides and the correct state official to notify.[2] In addition, the punishment for failing to identify the correct government official is severe: class members may choose not to be bound by a settlement or consent decree. 28 U.S.C. § 1715(e) (2005); Robert H. Klonoff & Mark Herrmann, *The Class Action Fairness Act: An Ill-Conceived Approach to Class Settlements*, 80 Tul. L. Rev. 1695, 1708 (2006). The notice provision also creates a 90 day delay in the approval of class action settlements. Under section 1715, "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice requirement . . ." 28 U.S.C. § 1715(e).

Despite the consequences of failing to comply with CAFA's notice requirements and the burdensome delay in obtaining settlement approval, section 1715 does not give **any** substantive or procedural rights to the recipients of the notice, nor does it suggest that they have a remedy. In fact, the "appropriate federal and state official" is under no affirmative obligation to respond to the notice. 28 U.S.C. § 1715(f) ("Nothing in this section shall be construed to expand the authority of, or impose any obligations, duties, or responsibilities upon, Federal or State officials.").[3]

### A. Because Securities Settlements are Sufficiently Regulated by the PSLRA and Federal Rule of Civil Procedure 23, CAFA's Notice Provision Does Not Apply

The stated purpose behind CAFA's Consumers' Class Action Bill of Rights notice provision is to "provide[] an additional mechanism to safeguard plaintiff class members'

---

[2] Some commentators have coined the notice provision "the Frankenstein's Monster of CAFA." Edward F. Sherman, *Class Actions After the Class Action Fairness Act of 2005*, 80 TUL. L. REV. 1593, 1614 (2006).

[3] This is only one of the many inconsistencies found in the loosely-drafted legislation. For example, another stated purpose of the Act is to assure **fair and prompt recoveries** for class remembers with legitimate claims, yet CAFA's notice provision only slows the process of providing recovery to class members by imposing a 90 day waiting period before any class settlement may be approved. 28 U.S.C. § 1715(e); S. REP. 109-14, at *30; *see also Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.*, 453 F.3d 1140 (9th Cir. 2006) (clarifying CAFA's review of remand orders, which requires that the application for appeal be made **not less than** 7 days after entry of the order) (emphasis added).



Honorable Joanna Seybert
United States District Court
January 26, 2007
Page 4

rights." S. REP. 109-14, at *3. This objective is purportedly achieved by requiring that notice of class action settlements be sent to the appropriate state and federal officials, "so that they may voice concerns if they believe that the class action settlement is not in the best interest of their citizens."[4]  *Id.* at *4.  However, the PSLRA and Federal Rule of Civil Procedure 23 already impose "additional mechanisms" to safeguard plaintiff class members' rights by regulating securities class action settlements.  Accordingly, class actions brought under the 1933 and 1934 Acts should be excepted from CAFA's notice provision.

### (1) The PSLRA

Like CAFA, the PSLRA was enacted in an attempt to curb abuses in class action litigation.  Rather than targeting all class action lawsuits, however, the PSLRA focuses on private securities cases, and contains a number of procedural amendments to class actions brought under the 1933 and 1934 Acts.  *See* Public Law 104-67; *see also* Jeffrey T. Cook, *Recrafting the Jurisdictional Framework for Private Rights of Action Under the Federal Securities Laws*, 55 AM. U. L. REV. 621, 635 (2005) (providing an overview of the PSLRA, SLUSA, and the Class Action Fairness Act).  For example, securities class actions now require the appointment of the most adequate lead plaintiff, which is presumed to be the investor with the "largest financial interest in the relief sought by the class."  15 U.S.C. § 77z-

---

[4] Coupon settlements are the principal targets in CAFA's consumers' bill of rights.  Edward F. Sherman, *Class Actions After the Class Action Fairness Act of 2005*, 80 TUL. L. REV. 1593, 1614 (2006).  In fact, every case provided by the Judiciary Committee as an example of "abusive settlement practices" arose from a consumer protection class action lawsuit in which a coupon settlement was reached.  Thus, new section 1712 is aimed at situations in which plaintiffs' lawyers negotiate settlements under which class members receive nothing but valueless coupons, while the class counsel receives substantial attorney's fees. S. Rep. 109-14, at *30.  Although the concern over coupon settlements may be valid, securities class action settlements **never** involve coupon settlements.  Clearly, CAFA's consumers' bill of rights was enacted to regulate settlement in consumer protection class actions, **not securities class actions**.  This further evidences Congressional intent to exclude securities class actions from CAFA altogether.

Most scholars do not believe CAFA's notice provision will give way to any identifiable benefits.  *See, e.g.*, Robert H. Klonoff & Mark Herrmann, *The Class Action Fairness Act: An Ill-Conceived Approach to Class Settlements*, 80 TUL. L. REV. 1695, 1707 (2006) (arguing that although CAFA requires defendants to send massive class action settlement papers to overworked state regulators, the Act does not actually compel the regulators to do anything and will not likely yield much benefit).



Honorable Joanna Seybert
United States District Court
January 26, 2007
Page 5

1(a)(3)(B)(iii) (2000). This measure serves to protect the class from its own lawyers, as "courts could be more confident settlements negotiated under the supervision of institutional plaintiffs were 'fair and reasonable' than is the case with settlements negotiated by unsupervised plaintiffs attorneys." Cook, 55 AM. U. L. REV. at 636 (citing S. REP. 104-98, at *11 (1995)). In addition, the PSLRA regulates securities class action settlements by requiring that the share of settlement awarded to a representative party serving on behalf of the class be equal to the portion of settlement awarded to all other class members and by mandating disclosure of settlement terms to class members. See 15 U.S.C. § 77z-1(a)(4), (7). Thus, the PSLRA effectively achieves what the CAFA notice provision attempts to do by imposing restrictions on the settlement of securities class actions.

### (2) Federal Rule of Civil Procedure 23

Federal Rule of Civil Procedure 23 also imposes mechanisms for safeguarding plaintiffs' rights. Rule 23(e)(1)(A) mandates judicial review of any settlement, voluntary dismissal, or compromise of claims of a certified class. FED. R. CIV. P. 23(d)(1)(A). In determining whether a proposed settlement is fair, reasonable and adequate, the court must examine whether the interests of the class are better served by the settlement than by further litigation. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.6 (2004). Thus, unlike section 1715, Rule 23(e)(1)(A) imposes an **affirmative** obligation on the court to approve, disapprove, or impose conditions on the settlement. This alone does more to safeguard plaintiffs rights than does the notice provision of CAFA, which does not impose **any** obligation on the federal or state official to act upon the terms of any settlement.

### B. Excluding Securities Cases from CAFA's Settlement Notice Requirement is Consistent with other CAFA Provisions and in Accordance with Legislative Intent

Although Section 1715 does not explicitly exempt cases brought under the 1933 and 1934 Acts, excluding securities cases from CAFA's notice provision is consistent with the legislative intent that such cases be excluded from CAFA **altogether**. See 149 Cong. Rec. H5282 (daily ed. June 12, 2003) (statement of Rep. Sensenbrenner) (noting that draft legislation specifically excludes a number of Federal securities cases). Congress' intent to exclude securities cases from CAFA is evidenced by the specific exclusion of securities cases from two of CAFA's provisions.

First, section 1332(d)(9), the amended federal diversity jurisdiction statute, excludes all class actions involving claims concerning a covered security as defined under the 1933 and 1934 Acts. 28 U.S.C. § 1332(d)(9) (2005). Second, CAFA's removal provision, section 1453, also excludes class actions involving claims concerning a security. 28 U.S.C. §



Honorable Joanna Seybert
United States District Court
January 26, 2007
Page 6

1453(d)(1) (2005).  Claims brought under the 1933 and 1934 Act were purposefully excluded from CAFA's reach because they are already governed by the Securities Litigation Reform Act.  In exempting such claims, Congress made a conscious effort "not to disturb the carefully crafted framework for litigating in this context."  S. REP. 109-14, at *50; *see also* 149 Cong. Rec. H5282 (daily ed. June 12, 2003) (statement of Rep. Sensenbrenner) (noting that draft legislation specifically excludes a number of Federal securities cases); 148 Cong. Rec. H840 (daily ed. Mar. 13, 2003) (statement of Rep. Pryce) (stating that "this has nothing to do with Enron . . . Securities litigation is carved out entirely by this legislation.  It would not cover Enron").  Thus, excluding securities cases from CAFA's settlement notice requirement is in accordance with the legislative intent to exclude such cases from all aspects of CAFA.  Any other result would be demonstrably at odds with the intentions of CAFA drafters.

### Conclusion

Based on the foregoing, CAFA's notice provision should not apply to securities cases, such as this one, because securities class action settlements are sufficiently regulated by the PSLRA and Federal Rule of Civil Procedure 23.  In addition, failing to exclude securities cases from CAFA's notice requirement would be inconsistent with other CAFA provisions and at odds with the intent of CAFA's drafters.  In any event, given the uncertainty over the application of CAFA's notice provisions, Plaintiffs respectfully submit that if the Court determines that the notice provisions of CAFA apply, the Court may simply order compliance with those provisions either in the order preliminarily approving the settlement or in a separate order.

Respectfully submitted,

Samuel H. Rudman

cc: Service List

DHB Industries
Service List

**Counsel for Defendants**

Seth T. Taube
Leigh M. Nemetz
R. Stan Mortenson
Richard B. Harper
Baker Botts, L.L.P.
30 Rockefeller Plaza
New York, NY 10112
212/408-2500

C. Neil Gray
George C. Canellos
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005-1413
212/530-5000
212/530-5219(Fax)

Jerome Gotkin
Chrysler Center, 666 Third Avenue
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
New York, NY 10017
212/935-3000
212/983-3115(Fax)

David Paul Kasakove
Howard M. Rogatnick
Bryan Cave LLP
1290 Avenue of the Americas
New York, NY 10104
212/541-2096
212/541-1396 (fax)

Mark Holland
Robert G. Houck
Mary K. Dulka
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
212/878-8000
212/878-8375(Fax)

Adam L. Sisitsky
R. Robert Popeo
John F. Sylvia
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111
617/542-6000
617/542-2241(Fax)

Roland G. Riopelle
Sercarz & Riopelle, LLP
152 West 57th Street, 24th Floor
New York, NY 10019
212/586-4900
212/586-1234(Fax)

Celia Cohen
Steven Gary Kobre
Justin Vaun Shur
Kobre & Kim LLP
800 Third Avenue
New York, NY 10022
212/488-1200
212/488-1220 (fax)

**Counsel for Plaintiffs**
Lynda J. Grant
Nicole M. Zeiss
Labaton Sucharow & Rudoff LLP
100 Park Avenue, 12th Floor
New York, NY 10017-5563
212/907-0700
212/818-0477(Fax)

Samuel H. Rudman
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747
631/367-7100
631/367-1173(Fax)

Patrick O'Hara
Cavanagh & O'Hara
407 East Adams Street
Springfield, IL  62701
217/544-1771
217/544-9894 (fax)

William S. Lerach
Thomas G. Wilhelm
Keith Park
Lerach Coughlin Stoia Geller Rudman
Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
619/231-1058
619/231-7423(Fax)

Kim Elaine Miller
Kahn Gauthier Swick, LLC
114 E 39th Street
New York, NY 10016
917/439-5952
504/455-1498